```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ALBERT NIPON, et al.,                  :
                                                  13 Civ. 1414 (HBP)
                    Plaintiffs,    :

                                                  OPINION
      -against-                    :              AND ORDER

THE YALE CLUB OF NEW YORK CITY,    :

                    Defendant.     :

----------------------------------X
```

           PITMAN, United States Magistrate Judge:


I.   Introduction


           Plaintiffs Albert Nipon and Pearl Nipon commenced this

action against the Yale Club of New York City (the "Yale Club")

to recover for injuries after Albert Nipon fell on the front step

of the Yale Club (Complaint, dated March 1, 2013 (Docket Item 1)

("Compl.")).  By notice of motion dated June 3, 2014 (Docket Item

18), the Yale Club moves for summary judgment, seeking dismissal

of the complaint in its entirety.  The parties have consented to

my exercising plenary jurisdiction pursuant to 28 U.S.C. §

636(c).[1]

---

          [1]Docket Item 13 is a third-party complaint naming two
additional entities as third-party defendants.  These third-party
defendants have not consented to my exercising plenary
jurisdiction in this matter.  However, no proof of service with
                                          (continued...)

For the following reasons, I deny defendant's motion for summary judgment in its entirety.

II.  <u>Facts</u>

On October 18, 2011 at approximately 11:30 A.M., Albert Nipon fell as he was entering the Yale Club (Plaintiffs' Answers and Objections to Interrogatories ("Pls.' Int. Ans."),[2] annexed as Ex. D to the Declaration of David Weiser, Esq., dated June 4, 2014 (Docket Item 22) ("Weiser Decl."), at 17).  Mr. Nipon, who was eighty-four years old at the time, sustained serious injuries as a result of the fall (<u>see</u> Pls.' Int. Ans. at 17-18, annexed as Ex. D to Weiser Decl.; Albert Nipon's Medical Records, annexed as Ex. 6 to the Declaration of Martin P. Duffey, Esq., dated June 23, 2014 (Docket Item 26) ("Duffey Decl.")).

_____

[1](...continued)
respect to the third-party complaint has been filed, and the third-party defendants are not, therefore, presently parties to this action.  Accordingly, the lack of consent by the third-party defendants is immaterial.

[2]Because Plaintiffs' Interrogatory Answers are not serially paginated, I use the page numbers assigned by the Court's ECF system.

A.   The Condition
     of the Entrance

The entrance at which Mr. Nipon fell had a single step, about four inches high, that led to a platform and a revolving door (Deposition of Albert Nipon ("Nipon Dep."),[3] annexed as Ex. H to Weiser Decl., at 58-60; Deposition of Victor Famulari ("Famulari Dep."), annexed as Ex. L to Weiser Decl., at 44-45). The step had a nosing,[4] and a handrail on either side (Nipon Dep. at 74-75, annexed as Ex. H to Weiser Decl.; see also Defendant's Photographs of the Tread ("Def.'s Photos."), annexed as Ex. N to Weiser Decl.; Animated Re-enactment of Albert Nipon's Accident ("Re-enactment"), annexed as Ex. S to Weiser Decl.).   The en-trance also had a side awning panel that projected outward from the building and reached from the sidewalk to above the doorway (see Surveillance Tape of Albert Nipon's Accident ("Surveillance Tape"), annexed as Ex. Q to Weiser Decl.).   The side awning appears to have been a piece of opaque blue canvas, with a

---

[3]Mr. Nipon has been diagnosed with dementia.  The testimony cited herein is from the second session of his deposition.  The first session of Mr. Nipon's deposition was terminated after he was unable to respond clearly to questions.  Mr. Nipon was subsequently evaluated by his treating physician and found to be able to proceed before his deposition was continued.

[4]A nosing is the rounded portion of a stair tread that projects out over the riser.  The riser is the vertical face of the step.

transparent panel in the middle; its apparent purpose was to shield the entry from wind and precipitation (see Surveillance Tape, annexed as Ex. Q to Weiser Decl.).

The step itself was also marked, although it is not clear from the record to what extent it was marked at the time of Mr. Nipon's fall. The parties do not appear to dispute that there was a striped black and yellow piece of wood ("Marker") on the riser of the step (Defendant's Memorandum of Law,[5] dated May 30, 2014 (Docket Item 24) ("Def.'s Mem."), at 5-6; Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated June 23, 2014 (Docket Item 28) ("Pls.' Mem."), at 8 n.3). The Yale Club's Chief Engineer, Stephan M. Lehman, testified that the Marker was installed in approximately 2000 (Deposition of Stephan M. Lehman ("Lehman Dep."), annexed as Ex. K to Weiser Decl., at 22), and the Yale Club's Director of Security, Raymond Caltagirone, testified at his deposition that the Marker was present on the riser at the time Mr. Nipon fell (Deposition of Raymond Caltagirone ("Caltagirone Dep."), annexed as Ex. J to Weiser Decl., at 11, 26-28). The parties do not dispute that it was not until later in 2011, after Mr. Nipon's accident, that the Marker was removed from the riser and replaced

_____

[5]Because this document is not serially paginated, I use the page numbers assigned by the Court's ECF system.

with unpainted granite (Lehman Dep. at 57, annexed as Ex. K to
Weiser Decl.; Defendant's Photographs of the Marker, annexed as
Ex. P to Weiser Decl.; Defendant's Statement of Uncontested Facts
- Local Rule 56.1, dated May 14, 2014 (Docket Item 23) ("Def.'s
56.1") ¶ 25; Pls.' Mem. at 8).

   The parties do dispute whether the tread of the step
was painted bright yellow at the time of Mr. Nipon's fall.
Defendant has submitted photographs it claims show the tread
painted bright yellow (Def.'s Mem. at 5); however, the photo-
graphs are black and white, and while one is dated August 23,
2012, the balance are undated (Def.'s Photos., annexed as Ex. N
to Weiser Decl.).  Plaintiffs have submitted two photographs,
both in color, one of which shows the step in 2012 with the tread
painted bright yellow and the Marker replaced with unpainted
granite; the second photograph shows the Marker intact and the
tread unpainted except for yellow paint along the nosing that
appears to be almost entirely worn off (Plaintiffs' Photographs
of the Yale Club Step ("Pls.' Photos."), annexed as Ex. 3 to
Duffey Decl.).  Mr. Nipon testified at his deposition that he
does not "remember any color on the [tread of the] step[]," that
it was his "feeling, it wasn't painted" and that he did not know
whether the Marker was present at the time of his accident (Nipon
Dep. at 76, 78, 87-88, annexed as Ex. H to Weiser Decl.).  A

surveillance tape taken at the time of the accident does not show the step (Surveillance Tape, annexed as Ex. Q to Weiser Decl.).

   B.   Mr. Nipon's
        Deposition Testimony

        Mr. Nipon testified that he "tripp[ed] over the step and f[ell] into the entrance to the [Yale C]lub" (Nipon Dep. at 47, annexed as Ex. H to Weiser Decl.).  He "knew there was a step[, a] step up" but also did not remember if he saw the step before his fall (Nipon Dep. at 52, annexed as Ex. H to Weiser Decl.).  Mr. Nipon testified that his "foot got caught on a step and [he] fell forward" and that he "[did not] know what caused [his foot] to get caught" (Nipon Dep. at 48-49, annexed as Ex. H to Weiser Decl.).  Although he later stated that his foot got caught on "[t]he lip of the step," he subsequently testified that he was assuming this fact and could not state "as a fact" that his foot got caught (Nipon Dep. at 67, annexed as Ex. H to Weiser Decl.).  When asked, "When you say your right foot got caught onto the step, did your right foot get entrapped into something, did your right foot just trip on the step or something else," plaintiff responded, "Well I can't say exactly, but I just tripped on the step" (Nipon Dep. at 49, annexed as Ex. H to Weiser Decl.).  Mr. Nipon stated that he was "looking into . . .

6

the entrance" as he was approaching the step (Nipon Dep. at 52, annexed as Ex. H to Weiser Decl.).  He had never been to the Yale Club before (Nipon Dep. at 56, annexed as Ex. H to Weiser Decl.). Mr. Nipon testified that no one was exiting the revolving door as he entered (Nipon Dep. at 71-72, annexed as Ex. H to Weiser Decl.), but the video tape of the incident depicts someone exiting at the time Mr. Nipon was approaching the entrance (see Surveillance Tape, annexed as Ex. Q to Weiser Decl.).

        C.   Evidence of Compliance
             with the Building Code

        Defendant has also submitted testimony from a licensed architect, Victor Famulari, who testified that the front step of the Yale Club was "not a code compliant step by today's law, but when the building was built, it is, [for] lack of a better word, grandfathered in.  It's accepted" (Famulari Dep. at 22, annexed as Ex. L to Weiser Decl.).  Mr. Famulari testified that the New York City Department of Buildings ("Department of Buildings") reviewed and approved renovations made in 2005 to the Yale Club entrance as being compliant with the 1968 Building Code (Famulari Dep. at 33-37, annexed as Ex. L to Weiser Decl.); see also Department of Buildings Application ("Dep't of Buildings Appl."), annexed as Ex. M to Weiser Decl.; Blueprints for the Yale Club

7

Renovation ("Blueprints"), annexed as Ex. V to Weiser Decl.; Department of Buildings Letter of Completion, annexed as Ex. W to Weiser Decl.).  Mr. Famulari implied that the step was governed by the 1968 Code at the time the 2005 renovations were approved by the Department of Buildings (see Famulari Dep. at 33-37, annexed as Ex. L to Weiser Decl.).[6]  Mr. Famulari also testified that the step had a "legal nosing" because the nosing projected between an inch and an inch and a half past the riser and that the nosing was "not a tripping hazard" (Famulari Dep. at 43-44, annexed as Ex. L to Weiser Decl.).

Oddly, the Yale Club has submitted evidence that other visitors to the Yale Club had fallen on the same step prior to Mr. Nipon's accident (Caltagirone Dep. at 47-48, 55, 87-89, 91-95, annexed as Ex. J to Weiser Decl.; see also Yale Club Incident and Accident Reports, annexed as Ex. O to Weiser Decl.).  The Yale Club's purpose in submitting this evidence is unclear.  In addition, the Yale Club has submitted evidence that the Department of Buildings visited the premises the day after Mr. Nipon's

---

[6]Mr. Famulari appears to imply that the Yale Club's apparent compliance with the 1968 Code, when the 2005 renovations to the front step were completed in 2006, demonstrates both that the 1968 Code still applied to the Yale Club at the time of Mr. Nipon's fall and that the step was still compliant with the 1968 Code at the time of Mr. Nipon's fall (see Famulari Dep. at 22, 33-37, annexed to Ex. L to Weiser Decl.).

fall in response to an anonymous complaint filed in June 2011, and that the inspector determined that the step was not a code violation and "not a trip hazard[]" (Department of Buildings Response to Complaint ("Dep't of Buildings Resp."), annexed as Ex. E to Weiser Decl.).

       D.    Expert
           <u>Opinions</u>

     Both parties obtained expert opinions.  The Yale Club submitted the opinion of an engineer, who opined that the step was in compliance with the 1968 Building Code (Expert Opinion of Paul W. Dorothy ("Dorothy Op."), annexed as Ex. R to Weiser Decl.).  Defendant also submitted plaintiffs' expert opinion, an opinion from a human factors expert who opined that a single shallow step is dangerous because it is lower in the field of vision and, therefore, less visible "due to increased photo-receptor spacing, crowding and distance from the focus of attention" (Expert Opinion of Marc Green, annexed as Ex. T to Weiser Decl., at 4).

III. <u>Analysis</u>

    A.   <u>Legal Standards</u>

       1.  <u>Summary Judgment</u>

       The standards applicable to a motion for summary judgment are well-settled and require only brief review.

       Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party . . . is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  To grant the motion, the court must determine that there is no genuine issue of material fact to be tried.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine factual issue derives from the "evidence [being] such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. 2505.  The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual argument based on "conjecture or surmise," <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).  The Supreme Court teaches that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); <u>see also</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).  It is a settled rule that "[c]redibility assessments, choices between conflicting versions of the events, and

10

the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

"Material facts are those which 'might affect the out-come of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007) (second alteration in original), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

11

which that party will bear the burden of proof at trial."
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "In such a
situation, there can be 'no genuine issue as to any material
fact,' since a complete failure of proof concerning an essential
element of the nonmoving party's case necessarily renders all
other facts immaterial."  Celotex Corp. v. Catrett, supra, 477
U.S. at 322-23, citing Fed.R.Civ.P. 56.

        "[S]ummary judgment is highly unusual in a negligence
action where the assessment of reasonableness generally is a
factual question to be addressed by the jury."  King v. Crossland
Sav. Bank, 111 F.3d 251, 259 (2d Cir. 1997); accord Stagl v.
Delta Airlines, Inc., 52 F.3d 463, 470-71 (2d Cir. 1995), citing
Nallan v. Helmsley-Spear, Inc., 50 N.Y.2d 507, 520 n.8, 407
N.E.2d 451, 458 n.8, 429 N.Y.S.2d 606, 614 n.8 (1980); Ugarriza
v. Schmieder, 46 N.Y.2d 471, 474, 386 N.E.2d 1324, 1325, 414
N.Y.S.2d 304, 305 (1979) ("Negligence cases by their very nature
do not usually lend themselves to summary judgment, since often,
even if all parties are in agreement as to the underlying facts,
the very question of negligence is itself a question for jury
determination.").

2.  Negligence

Under New York law,[7] negligence requires proof of "'(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006), quoting Solomon v. City of New York, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 1294, 499 N.Y.S.2d 392, 392 (1985).  When the claim is based on an alleged defect in defendant's premises, plaintiff must prove that defendant created the condition or had actual or constructive knowledge of its existence.  Manning v. Tracy J's, Inc., 06 Civ. 956 (DF), 2008 WL 1780048 at *5 (S.D.N.Y. Apr. 17, 2008) (Freeman, M.J.), citing Miller v. Gimbel Bros., 262 N.Y. 107, 108, 186 N.E. 410, 410 (1933) (per curiam), Goldman v. Waldbaum, Inc., 248 A.D.2d 436, 437, 669 N.Y.S.2d 669, 670 (2d

---

[7]Both parties rely on New York law and do not claim that the law of any other forum applies; "such 'implied consent . . . is sufficient to establish choice of law.'"  Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) (alteration in original), quoting Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000); accord Teitelbaum v. Lay Siok Lin, 423 F. App'x 106, 106 (2d Cir. 2011) (summary order).  See generally Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the choice of New York . . . law, all are deemed to have consented to its application.  No reason of policy warrants a departure from their implied choice-of-law. In practice, litigants often ignore conflicts rules, opting instead to apply the law of the forum . . . " (internal citations omitted)).

Dep't 1998) and Ohanessian v. Chase Manhattan Realty Leasing Corp., 193 A.D.2d 567, 567, 598 N.Y.S.2d 204, 205 (1st Dep't 1993).

      Although the duty of care owed by a land owner formerly turned on whether the plaintiff was a trespasser, licensee or invitee, the New York Court of Appeals eliminated these distinctions in 1976.  Basso v. Miller, 40 N.Y.2d 233, 241, 352 N.E.2d 868, 872, 386 N.Y.S.2d 564, 568 (1976).  New York land owners now owe all individuals on their property "a duty of reasonable care under the circumstances to maintain their property in a safe condition."  Tagle v. Jakob, 97 N.Y.2d 165, 168, 763 N.E.2d 107, 108-09, 737 N.Y.S.2d 331, 332-33 (2001); accord Smith v. N.Y. Enter. Am., Inc., 06 Civ. 3082 (PKL), 2008 WL 2810182 at *4 (S.D.N.Y. July 21, 2008) (Leisure, D.J.), quoting Di Ponzio v. Riordan, 89 N.Y.2d 578, 582, 679 N.E.2d 616, 618, 657 N.Y.S.2d 377, 379 (1997).  This obligation includes a duty to "eliminat[e], protect[] against, or warn[] of dangerous, defective, or otherwise hazardous conditions."  Pinero v. Rite Aid Inc., 294 A.D.2d 251, 252, 743 N.Y.S.2d 21, 22-23 (1st Dep't 2002), aff'd, 99 N.Y.2d 541, 783 N.E.2d 895, 753 N.Y.S.2d 805 (2002).  "'[T]he duty to maintain premises in a reasonably safe condition is analytically distinct from the duty to warn, and . . . liability may be premised on a breach of the duty to maintain reasonably

14

safe conditions even where the obviousness of the risk negates any duty to warn.'" Westbrook v. WR Activities-Cabrera Mkts., 5 A.D.3d 69, 73, 773 N.Y.S.2d 38, 42 (1st Dep't 2004), quoting Cohen v. Shopwell, Inc., 309 A.D.2d 560, 562, 765 N.Y.S.2d 40, 42 (1st Dep't 2003); see also Michalski v. Home Depot, Inc., 225 F.3d 113, 121 (2d Cir. 2000) ("[T]he open and obvious nature of a dangerous condition on its property does not relieve a landowner from a duty of care where harm from an open and obvious hazard is readily foreseeable by the landowner and the landowner has reason to know that the visitor might not expect or be distracted from observing the hazard." (citing Restatement (Second) of Torts § 343A (1965))); 1A New York Pattern Jury Instructions - Civil PJI 2:90 (3d ed. 2014). As a result, "the open and obvious nature of a hazard merely negates the duty to warn of the hazard, not necessarily all duty to maintain premises in a reasonably safe condition." Westbrook v. WR Activities-Cabrera Mkts., supra, 5 A.D.3d at 73, 773 N.Y.S.2d at 42 (emphasis in original); accord Saretsky v. 85 Kenmare Realty Corp., 85 A.D.3d 89, 92, 924 N.Y.S.2d 32, 34 (1st Dep't 2011); DiVietro v. Gould Palisades Corp., 4 A.D.3d 324, 325, 771 N.Y.S.2d 527, 529 (2d Dep't 2004), citing Cupo v. Karfunkel, 1 A.D.3d 48, 52, 767 N.Y.S.2d 40, 43 (2d Dep't 2004).

"[T]he issue of whether a hazard is latent or open and obvious is generally fact-specific and thus usually a jury question, [but] a court may determine that a risk was open and obvious as a matter of law when the established facts compel that conclusion." Tagle v. Jakob, supra, 97 N.Y.2d at 169, 763 N.E.2d at 110, 737 N.Y.S.2d at 334 (internal citations omitted). Similarly, "'[w]hether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is gener-ally a question of fact for the jury.'" Surujnaraine v. Valley Stream Cent. High Sch. Dist., 88 A.D.3d 866, 867, 931 N.Y.S.2d 119, 120 (2d Dep't 2011), quoting Trincere v. County of Suffolk, 90 N.Y.2d 976, 977, 688 N.E.2d 489, 490, 655 N.Y.S.2d 615, 616 (1997) (emphasizing the fact-specific nature of assessing whether a dangerous condition exists).

B.    Analysis of
      Plaintiffs' Claim

Plaintiffs assert a claim for common law negligence, alleging that defendant failed to maintain the entrance to its property in reasonably safe condition (Compl. ¶¶ 27-28).  Defen-dant seeks summary judgment dismissing the complaint, arguing that the condition of its entrance was open and obvious and not

16

inherently dangerous (Def.'s Mem. at 4, 6).  Defendant also argues that even if the entrance was a hazard, plaintiffs have not established that defendant was on notice of the allegedly dangerous condition, nor have plaintiffs established causation (Def.'s Mem. at 6-7).

> 1.   Open and
>      <u>Obvious Condition</u>

Defendant first argues that it did not breach any duty to Mr. Nipon because the step was open and obvious (Def.'s Mem. at 4).  In support of this contention, defendant submitted a photograph of the Yale Club entrance and argues that the yellow tread and Marker on the riser rendered the step open and obvious at the time of Mr. Nipon's fall (Def.'s Mem. at 5-6; Def.'s Photos., annexed as Ex. N to Weiser Decl.).  Defendant also submitted the surveillance tape of Mr. Nipon's fall and an animated re-enactment purportedly showing that Mr. Nipon had an unobstructed view of the step (Def.'s Mem. at 7-8; Surveillance Tape, annexed as Ex. Q to Weiser Decl.; Re-enactment, annexed as Ex. S to Weiser Decl.).  In addition, defendant submitted deposition testimony in which Mr. Nipon stated that he knew there was a step at the Yale Club entrance (Def.'s 56.1 ¶ 10).

In response, plaintiffs have submitted Mr. Nipon's own deposition testimony that he did not see the step before his fall and that he did not see yellow paint on the tread (Pls.' Mem. at 5-7).  Plaintiffs also argue that the surveillance video shows that Mr. Nipon did not look down and, thus, could not have seen the step, and that the video also shows that his view of the step was blocked by the side awning as he approached the entrance from the sidewalk (Pls.' Mem. at 4-5, 8; Surveillance Tape, annexed as Ex. Q to Weiser Decl.).  Plaintiffs have submitted a color photograph showing the step with no paint on the tread except for a small amount of yellow at one end of the nosing; although this photograph is not dated, it appears to have been taken before late 2011 because it shows the Marker on the riser (see Pls.' Photos., annexed as Ex. 3 to Duffey Decl.; Lehman Dep. at 48, 57, annexed as Ex. K to Weiser Decl.).

Under New York law, "'even visible hazards do not necessarily qualify as open and obvious' because the 'nature or location of some hazards . . . make them likely to be over-looked.'"  Saretsky v. 85 Kenmare Realty Corp., supra, 85 A.D.3d at 92, 924 N.Y.S.2d at 34, quoting Westbrook v. WR Activities-Cabrera Mkts., supra, 5 A.D.3d at 72, 765 N.Y.S.2d at 41.  New York courts have shown great reluctance to grant summary judgment on the theory that a condition is open and obvious.  See e.g.,

Belsinger v. M & M Bowling & Trophy Supplies, Inc., 108 A.D.3d 1041, 1043, 969 N.Y.S.2d 644, 646 (4th Dep't 2013) (finding a question of fact as to whether step was open and obvious when "the sign [warning of the step] was faded and accompanied by several other signs, thus potentially reducing its effectiveness . . . [and] defendants did not paint or mark the step with bright colors or otherwise draw attention to it"); Hayes v. Texas Roadhouse Holdings, LLC, 100 A.D.3d 1532, 1533, 954 N.Y.S.2d 348, 350 (4th Dep't 2012) (finding a question of fact as to whether curb was open and obvious notwithstanding plaintiff's testimony that she did not look for or notice the curb); Jouniene v. H.R.H. Constr. Corp., 6 A.D.3d 199, 200-01, 774 N.Y.S.2d 525, 526-27 (1st Dep't 2004) (finding a question of fact as to whether a pipe extending horizontally from a building was open and obvious to a pedestrian walking into "the glare from the sun"); Westbrook v. WR Activities-Cabrera Mkts., supra, 5 A.D.3d at 70, 773 N.Y.S.2d at 41 (finding a question of fact as to whether a cardboard box on the floor of an aisle in a grocery store was open and obvious); Mauriello v. Port Auth. of New York & New Jersey, 8 A.D.3d 200, 200-01, 779 N.Y.S.2d 199, 200-01 (1st Dep't 2004) (finding a question of fact as to whether a ten inch high track on the floor of a baggage claim area was open and obvious); De Conno v. Golub Corp., 255 A.D.2d 734, 735, 680 N.Y.S.2d 727, 728 (3d Dep't 1998)

(finding a question of fact as to whether an orange marker cone in aisle of a grocery store was open and obvious).

Defendant has not sustained its burden of showing that the step was open and obvious as a matter of law.  The photograph submitted by defendant is not probative of the condition of the tread at the time of Mr. Nipon's fall.  The photograph is black and white and dated almost a year after Mr. Nipon's accident (see Def.'s Photos., annexed as Ex. N to Weiser Decl.).  The photograph was taken after the Marker was replaced with a granite strip, which defendant does not dispute occurred after Mr. Nipon's fall.  The surveillance tape is also not probative of the condition of the step because the step is not visible in the footage (Surveillance Tape, annexed as Ex. Q to Weiser Decl.).

While the parties agree that the Marker was present on the riser at the time of Mr. Nipon's fall, given the nature of this entrance, there is a question of fact as to whether the Marker rendered the step open and obvious to a first-time visitor to the Yale Club.  Although the Marker was on the riser at the time of the accident, because of the side awning panel and the nosing that extended over the riser, the step may not have been visible from the sidewalk on which Mr. Nipon approached (see Surveillance Tape, annexed as Ex. Q to Weiser Decl.).  In addition, Mr. Nipon's testimony is ambiguous as to whether he saw the

step (see Nipon Dep. at 52, annexed as Ex. H to Weiser Decl.).
The evidence here is not sufficient to establish conclusively
that the step was open and obvious as a matter of law at the time
of Mr. Nipon's accident.

Accordingly, I deny summary judgment on the issue of
whether the step was open and obvious.

### 2.   Dangerous Condition

Defendant also appears to argue that the entrance to
the Yale Club did not constitute a dangerous condition because
the step was in compliance with the New York City Building Code
(see Def.'s Mem. at 3-4).  Defendant has submitted testimony from
an architect and an engineer and documents from the Department of
Buildings in support of this contention (see Dep't of Buildings
Resp., annexed as Ex. E to Weiser Decl.; Famulari Dep. at 43-44,
annexed as Ex. L to Weiser Decl.; Dep't of Buildings Appl.,
annexed as Ex. M to Weiser Decl.; Dorothy Op., annexed as Ex. R
to Weiser Decl.; Blueprints, annexed as Ex. V to Weiser Decl.).

Plaintiffs dispute whether the step complied with the
applicable Building Code (Pls.' Mem. at 15-19) and also argue
that, in any event, compliance with the Building Code does not
establish that defendant acted with due care as a matter of law
(Pls.' Mem. at 13).

21

Even if the step did comply with the New York City
Building Code, an issue that I need not and do not decide, that
fact would not be dispositive of the issue of negligence.
Compliance with a building code does not establish due care;
compliance is only some evidence of due care.  See Miner v. Long
Island Lighting Co., 40 N.Y.2d 372, 381, 353 N.E.2d 805, 810,
386, N.Y.S.2d 842, 847 (1976), citing Texas & Pac. Ry. Co. v.
Behymer, 189 U.S. 468 (1903) and The T.J. Hooper, 60 F.2d 737 (2d
Cir. 1932).  "[W]hile the absence of such a violation might be
probative of due care, especially where there are specific safety
regulations dealing with the subject matter in issue, e.g.,
indoor stairways subject to extensive building code regulations,
it is hardly dispositive as a matter of law."  Janover v. Ryder
Sys., Inc., 1:05 Civ. 2841 (ENV)(MDG), 2006 WL 2335546 at *2
(E.D.N.Y. Aug. 10, 2006), citing Kellman v. 45 Tiemann Assocs.,
Inc., 87 N.Y.2d 871, 872, 662 N.E.2d 255, 256, 638 N.Y.S.2d 937,
938 (1995), Lamuraglia v. N.Y.C. Transit Auth., 299 A.D.2d 321,
324, 749 N.Y.S.2d 82, 86 (2d Dep't 2002) and Lugo v. LJN Toys,
Ltd., 146 A.D.2d 168, 171, 539 N.Y.S.2d 922, 924 (1st Dep't
1989), aff'd, 75 N.Y.2d 850, 552 N.E.2d 162, 552 N.Y.S.2d 914
(1990); see also Belsinger v. M & M Bowling & Trophy Supplies,
Inc., supra, 108 A.D.3d at 1042, 969 N.Y.S.2d at 646 ("[C]ompl-
iance with such codes does not necessarily preclude a jury from

finding that the . . . [step or the entryway] was part of or contributed to any inherently dangerous condition existing in the area of [plaintiff's] fall." (internal quotation marks omitted, first alteration added)).

Because Mr. Nipon here asserts a common law claim of negligence, compliance with the New York City Building Code is not dispositive on the issue of liability.  Accordingly, I also deny summary judgment on the issue of whether defendant maintained its premises in reasonably safe condition.

> 3.   <u>Notice</u>

The Yale Club next contends that it is entitled to summary judgment because plaintiffs have not established that it had notice of the allegedly hazardous nature of the entrance (Def.'s Mem. at 6).  Here, defendant created the condition at issue, "rendering irrelevant an inquiry into the usual questions of notice."  <u>Ohanessian v. Chase Manhattan Realty Leasing Corp.</u>, <u>supra</u>, 193 A.D.2d at 567, 598 N.Y.S.2d at 204 (internal quotation marks omitted); <u>accord</u> <u>Cook v. Rezende</u>, 32 N.Y.2d 596, 599, 300 N.E.2d 428, 429, 347 N.Y.S.2d 57, 59 (1973); <u>Jabbour v. Finnegan's Moving & Warehouse Corp.</u>, 299 A.D.2d 192, 192, 749 N.Y.S.2d 531, 532 (1st Dep't 2002).  Notice need be shown only when the owner did not create the condition.  <u>See</u> <u>e.g.</u>, <u>Mullin v.</u>

100 Church LLC, 12 A.D.3d 263, 264, 784 N.Y.S.2d 545, 546 (1st
Dep't 2004) ("To establish a prima facie case of negligence in a
slip and fall case, a plaintiff must demonstrate that the defen-
dant created the condition that caused the accident or had actual
or constructive notice of it.").  Because this case involves a
permanent feature of the Yale Club, and there is no evidence that
the premises were altered without the Yale Club's knowledge and
permission, proof of notice is unnecessary.

    4.   Causation

      Finally, the Yale Club argues that it is entitled to
summary judgment because there is no evidence that Mr. Nipon's
accident was caused by any aspect of the Yale Club's entrance
rather than Mr. Nipon's own inattention (Def.'s Mem. at 5-7).

      This argument also fails.  Whether Mr. Nipon was paying
attention to what he was doing and exercising reasonable care for
his own safety when entering the Yale Club is a classic question
of comparative negligence.  See Dillard v. N.Y.C. Hous. Auth.,
112 A.D.3d 504, 505, 977 N.Y.S.2d 226, 227-28 (1st Dep't 2013)
("[T]he evidence does not establish that plaintiff was the sole
proximate cause of her injury, but raises an issue of fact as to
her comparative negligence . . . [because defendant] did not
clear an established pedestrian walkway at all, although it was

foreseeable that residents and others would attempt to use it to exit the premises." (citations omitted)); Penge v. Bd. of Educ., 10 A.D.3d 251, 252, 781 N.Y.S.2d 68, 69 (1st Dep't 2004) ("Defendant's argument that the missing handrail on the right side of the staircase did not proximately cause plaintiff's fall since plaintiff chose not to use the available left-side handrail is more appropriately directed to the issue of comparative negligence."). As a result, it is properly a question for the jury. See Hazel v. Nika, 40 A.D.3d 430, 431, 836 N.Y.S.2d 573, 574 (1st Dep't 2007) ("The issue of comparative negligence is 'almost always . . . a question of fact' and 'almost exclusively a jury function.'" (alteration in original)), quoting Wartels v. Cnty. Asphalt, Inc., 29 N.Y.2d 372, 379, 278 N.E.2d 627, 631, 328 N.Y.S.2d 410, 416 (1972).

IV.  Conclusion

Accordingly, for all the foregoing reasons, I deny defendant's motion for summary judgment in all respects.

Dated:  New York, New York
        November 18, 2014

SO ORDERED

_Henry Pitman_

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Christopher C. Fallon, Jr., Esq.
Martin P. Duffey, Esq.
Cozen O'Connor P.C.
1900 Market Street
The Atrium
Philadelphia, Pennsylvania 19103

David Weiser, Esq.
Law Office of Vincent P. Crisci
17 State Street
8th Floor
New York, New York 10004