```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

ALBERT NIPON, et al.,              :

                Plaintiffs,        :   13 Civ. 1414 (HBP)

    -against-                      :   OPINION
                                       AND ORDER
THE YALE CLUB OF NEW YORK CITY,    :

                Defendant.         :

-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

      Plaintiffs move pursuant to Fed.R.Civ.P. 59 for a new trial limited to the issue of damages for Albert Nipon's past pain and suffering.[1] The parties have consented to my exercising plenary jurisdiction over this matter pursuant to 28 U.S.C. § 636(c).

      For the reasons set forth below, the motion is granted.

II. Facts

      This diversity action arises out of Albert Nipon's fall at the main entrance to the Yale Club in New York City on October

---

[1] Plaintiffs do not seek a new trial on any other issue.

18, 2011.[2]  As a result of the fall, Nipon, who was 84 years of age at the time of the accident, suffered a fracture to his right femur.[3]  Prior to the accident, Nipon's right hip had been replaced, and the 2011 fall required additional surgery and the implantation of additional appliances to repair the damage.

The matter was tried before a jury from July 13, 2015 through July 16, 2015.  The evidence offered with respect to Nipon's pain was far from overwhelming.[4]  Nipon testified that he was in pain immediately after the accident, and that following the surgery, it was painful for him to sit on a toilet or a hard seat.  Several months after the accident at the Yale Club, Nipon fell from a toilet and dislocated his right hip; reduction of this injury required the administration of general anesthesia.  There was no evidence that Nipon was ever prescribed analgesics for pain.  Nipon was never asked to quantify his pain in the months after the accident on a scale from one to ten nor was he

---

[2]The facts giving rise to the case are described in greater detail in my decision denying defendant's motion for summary judgment.  Nipon v. The Yale Club of New York City, 13 Civ. 1414 (HBP), 2014 WL 6466991 (S.D.N.Y. Nov. 18, 2014).

[3]The femur is "the bone that extends from the pelvis to the knee, being the longest and largest bone in the body."  Dorland's Illustrated Medical Dictionary at 612 (28th ed. 1994).

[4]Neither side has ordered the transcript of the trial.  Accordingly, the summary of the evidence set forth herein is based on my memory, the notes taken by my staff and me and the exhibits submitted in connection with this motion.

asked to describe how, if at all, the pain affected his activities of daily living.  Nipon was not asked when, if ever, the pain from the accident diminished or ceased.  Nipon did not offer any evidence concerning the pain, if any, he experienced while undergoing physical therapy after the accident.

There was also evidence suggesting that Nipon had regained many of the capabilities that he had before the accident.  Nipon testified that he goes to a gym two or three times a week.  At the gym he uses the treadmill, does crunches, leg curls, leg extensions and does leg presses using 80 to 90 pounds of weight.  In September 2012, he reported to his doctor that he had been pain free for six months; Nipon also reported to another physician -- Dr. Fenton -- that he had returned to all of his former activities without difficulty.

With respect to the impact of the injury on Nipon's enjoyment of life,[5] he testified that he could no longer make weekly trips from his home in Philadelphia to New York City to visit his grandchildren and that these trips had been a great part of his life.  There was also testimony that as a result of

---

[5]Under New York, which is applicable in this diversity action, loss of enjoyment of life is a constituent of pain and suffering damages and is not a separate element of damages. McDougald v. Garber, 73 N.Y.2d 246, 257, 536 N.E.2d 372, 376-77, 538 N.Y.S.2d 937, 941 (1989).

3

the accident, Nipon had been unable to make his annual vacation trip to Wyoming.  Nipon was, however, able to make a vacation trip to Israel after the accident.

At the conclusion of the trial, the jury awarded plaintiff $15,000.00 for past pain and suffering and $122,807.53 for medical expenses.  The jury further found that Nipon was 53% responsible for the accident and that defendant was 47% responsible.  The jury dismissed Pearl Nipon's claim for loss of consortium as well as claim for future pain and suffering and future medical expenses.  This verdict yielded a net recovery to Albert Nipon of $64,769.54 before costs, fees and liens, if any.

III.  Analysis

Plaintiff argues that a new trial on the issue of pain and suffering should be granted because the damages awarded by the jury were inadequate.

The standard for reviewing the adequacy of damages awards was succinctly stated by the late Honorable William C. Conner, United States District Judge, in Tisdel v. Barber, 968 F. Supp. 957, 960-61 (S.D.N.Y. 1997):

> The Supreme Court has determined that a federal district court sitting in diversity should apply state law standards in deciding a motion challenging the size of a verdict and requesting a new trial on damages. Gasperini v. Center for Humanities, Inc., 518 U.S. 415,

> ---- n. 22, 116 S.Ct. 2211, 2224 n. 22, 135 L.Ed.2d 659 (1996) (case involving New York law).  In New York, this standard is set by N.Y.C.P.L.R. § 5501(c), which provides that the state's appellate division "shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." . . . .  This is also the standard to be applied by New York trial courts.  Gasperini, 518 U.S. at ----, 116 S.Ct. at 2218, (citing, inter alia, Inya v. Ide Hyundai, Inc., 209 A.D.2d 1015, 619 N.Y.S.2d 440 (4th Dep't 1994); Lightfoot v. Union Carbide Corp., 901 F. Supp. 166, 169 (S.D.N.Y. 1995) (N.Y.C.P.L.R. § 5501(c)'s "materially deviates" standard "is pretty well established as applicable to [state] trial and appellate courts.")).  Thus, federal district courts applying New York law should apply the "deviates materially" standard, rather than the federal courts' more rigorous "shock the conscience" standard to questions of the adequacy of the verdict.  Gasperini, 518 U.S. at ----, n. 22, 116 S.Ct. at 2218, n. 22. This standard was intended to give New York appellate courts greater power to curb excessive and inadequate verdicts, thus providing greater stability in the tort system and greater fairness for similarly situated parties throughout the state.  Id. at ----, 116 S.Ct. at 2218 (citations omitted).
>
> To determine whether an award "deviates materially from what would be reasonable compensation," New York State courts look to awards approved in similar cases. Id. at ----, 116 S.Ct. at 2218 (citing, e.g., Leon v. J. & M. Peppe Realty Corp., 190 A.D.2d 400, 596 N.Y.S.2d 380, 389 (1st Dep't 1993)).  The standard for federal appellate review of a district court's application of the "deviates materially" standard is abuse of discretion.  Id. at ----, 116 S.Ct. at 2225; see also Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 750 (2d Cir. 1984) (trial court's refusal to set aside or reduce a jury award will be overturned only for abuse of discretion).

See also Marcoux v. Farm Serv. & Supplies, Inc., 290 F. Supp. 2d 457, 474 (S.D.N.Y. 2003) (Conner, D.J.) ("[F]ederal district

5

courts applying New York law should apply the 'deviates materially' standard . . . . To determine whether an award deviates materially from what would be reasonable compensation, New York State courts look to awards approved in similar cases." (internal quotations and citation marks omitted)).

> CPLR 5501(c) forces the court into the awkward position of attempting to do what the tort victim cannot -- analyze, classify and (implicitly) rank the affliction of one tort victim against that of another. In one sense this is an impossible endeavor. To measure the impact of a tragedy in the life of one person vis-a-vis another is beyond judicial (and perhaps human) capacity. Yet, if the courts are to administer a fair and just tort system, they must work out methods, however imperfect, for evaluating and entering tort judgments under Gasperini.

Geressy v. Digital Equip. Corp., 980 F. Supp. 640, 655 (E.D.N.Y. 1997) (Weinstein, D.J.), aff'd sub nom., Madden v. Digital Equip. Corp., 152 F.3d 919 (2d Cir. 1998) (summary order); accord Okraynets v. Metro. Transp. Auth., 555 F. Supp. 2d 420, 435-36 (S.D.N.Y. 2008) (McMahon, D.J.); In re Joint Eastern & Southern Dist. Asbestos Litig., 9 F. Supp. 2d 307, 311 (S.D.N.Y. 1998) (Sweet, D.J.).

Beyond the difficulty inherent in comparing the pain of one plaintiff to the pain of another plaintiff, is the inability to compare trial records. A jury's award for pain and suffering is the product of many factors. It is not unreasonable to expect that a plaintiff who offers more credible evidence on the

6

severity of his pain or the impact of an injury on his life will obtain a larger verdict than a plaintiff with a comparable injury who offers less evidence on these subjects.  The quality of both sides' advocacy has an impact on damages.  Whether counsel are permitted to suggest a number to the jury for pain and suffering affects the size of the verdict.  See Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1016 (2d Cir. 1995) (Counsel's "specifying target amounts for the jury to award is disfavored.  Such suggestions anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence."), vacated on other grounds, 518 U.S. 1031 (1996).  There is also a popularly held belief in this District that juries composed of citizens from more urban counties tend to return larger verdicts than juries composed of citizens from more rural counties.  All these factors (and countless others) can give rise to substantial disparities between verdicts even where similarly situated plaintiffs suffer the same injury.  See Nairn v. Nat'l R.R. Passenger Corp., 837 F.2d 565, 568 (2d Cir. 1988) ("[A]ny given judgment depends on a unique set of facts and circumstances."); accord Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 684 (2d Cir. 1993).  Yet, the reported decisions addressing motions for new trials based on excessive or inadequate verdicts almost never disclose these factors.  Therefore, a simple comparison of

the verdict in one case to the verdicts in other cases to determine adequacy or excessiveness will be blind to virtually all the significant variables and will necessarily be "rough justice," at best.  See generally Geressy v. Digital Equip. Corp., supra, 980 F. Supp. at 654-57 (describing the limitations inherent in comparing one personal injury verdict to another).  Nevertheless, the comparison, however imperfect, must be made.

As noted above, the evidence of Nipon's pain and suffering could not be described as comprehensive or overwhelming.[6]  Nevertheless, certain facts are either not in dispute or were not seriously contested at trial.  Nipon did fall at defendant's premises.  The fall resulted in fracture to a major bone that required open reduction under general anesthesia with the implantation of surgical appliances.  As a result of the injury, Nipon had to undergo rehabilitation and lost the enjoyment of his weekly visits with his grandchildren.  Notwithstanding the paucity of evidence, common sense teaches that there necessarily was non-trivial pain associated with plaintiff's surgery and rehabilitation and that his inability to visit his grandchildren diminished his enjoyment of life.

---

[6]Plaintiff did suffer from cognitive problems unrelated to his fall at the Yale Club which may have made it impossible for him to give more expansive testimony.

In Keenan v. Waldorf Carting Co., 02 Civ. 2379 (HBP), 2004 WL 1961592 (S.D.N.Y. Sept. 2, 2004), which was also tried before me, a plaintiff who was substantially younger than Nipon, was run over by a garbage truck and suffered a broken femur and fibula.  As a result of the injury, Keenan had to undergo two surgeries -- one to install rods, plates and other appliances and a second to remove those appliances.  Keenan was a yoga instructor and based on his testimony, medical evidence and his re-enactment of the accident in the courtroom, he appeared to have made a good, but not perfect, recovery.  Prior to determining Keenan's share of responsibility for the accident, the jury awarded $50,000 for pain and suffering for the three-year period between the date of the accident and date of the trial.  After surveying a substantial number of cases,[7] I concluded that the jury's award of $50,000 materially deviated from the range of reasonable compensation and granted a motion for a new trial.  In reviewing the verdicts in other cases, the closest comparable case that I found to the $50,000 verdict in Keenan was an award of $80,000 for a fractured tibia and femur in Inya v. Ide Hyundai, Inc., 209 A.D.2d 1015, 619 N.Y.S.2d 440 (4th

---

[7] The survey of cases in Keenan is incorporated herein by reference.

Dep't 1994).[8]  Most of the pain and suffering verdicts reviewed in Keenan for comparable injuries were substantially higher.  See 2004 WL 1961592 at *5-*6.

The analysis I performed in Keenan is instructive here.  Although neither the plaintiffs, the injury nor the treatment in the two cases are identical, they are comparable.  Both plaintiffs suffered a fracture of the same, major bone that required open reduction and the implantation of surgical appliances.  Because the new trial motions in both Keenan and this case arose out of the juries' verdicts for past pain and suffering, the difference in the plaintiffs' ages is immaterial.  Just as the $50,000 awarded in Keenan deviated materially from what would be fair compensation (as evidenced by the verdicts in other cases), I conclude that the $15,000 award in this case for past pain and suffering materially deviates from what would be reasonable compensation.  The cases surveyed in Keenan all awarded substantially larger damages for pain and suffering, and neither defendant's research nor my own has disclosed any case holding that $15,000, or any sum close to it, is adequate compensation for a broken femur requiring open reduction.  This

---

[8] In Inya, the jury awarded $20,000 for a fractured tibia and femur that required two surgeries.  The Appellate Division remanded the case for a new trial on damages unless the defendant stipulated to the entry of a judgment of $80,000.

conclusion is bolstered by the fact that the cases surveyed in Keenan awarding higher damages for comparable injuries all went to trial long before this matter when a dollar had more buying power than it does today. Thus, in terms of buying power, the $15,000 awarded in this case has far less real value than 30% (i.e., $15,000 ÷ $50,000) of the $50,000 award in Keenan that was found to be inadequate.

IV. Conclusion

Accordingly, for all the foregoing reasons, plaintiffs' motion for a new trial limited to the issue of plaintiff Albert Nipon's past pain and suffering is granted. Counsel are directed to consult promptly and to advise me within fourteen (14) days of the date of this Order of the estimated length of the damages retrial.

Dated: New York, New York
       March 17, 2016

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Christopher C. Fallon, Jr., Esq.
Martin P. Duffey, Esq.
Cozen O'Connor P.C.
1900 Market Street
The Atrium
Philadelphia, Pennsylvania 19103

David Weiser, Esq.
Law Office of Vincent P. Crisci
17 State Street
8th Floor
New York, New York 10004